THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *Plaintiff*, | Case No: 1:22-CR-86 |
| KEVIN MCAVENIA, *Defendant*. | Sentencing Date – November 8, 2022 |

**DEFENDANT'S POSITION ON SENTENCING**

**COMES NOW** the Defendant, **Mr. Kevin McAvenia ("Mr. McAvenia")**, by and through undersigned Counsel and submits to this Honorable Court this Memorandum in Aid of Sentencing in anticipation of arguments to be heard by this Court on **Tuesday, November 8, 2022,** where Mr. McAvenia will appear for sentencing. Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.3 of the United States Sentencing Guidelines ("Guidelines"), and this Court's Policy Regarding Procedures to be Followed in Guideline Sentencing, the Defendant, through counsel, states that he has received and reviewed the Presentence Investigation Report ("PSR") prepared in this case. The following information is respectfully submitted for consideration by this Court.

**Summary of Argument**

This memorandum is formulated from interviews with Mr. McAvenia, his wife, and his mother. This report is supplemented by letters from family members and loved ones. Mr. McAvenia hopes that this Memorandum will provide the Court with insight into the state of his continuing mental health struggles, his ongoing suffering from Post-Traumatic Stress Disorder,

the dynamics and obstacles preventing him from treating his mental health struggles, and the need for this Court to consider these factors in fashioning his sentence.

The Sentencing Guidelines in the instant case recommend a range of punishment from 121 – 151 Months. At the conclusion, Mr. McAvenia will ask this Court to sentence him to a variant sentence of the mandatory minimum of sixty (60) months.

## Background

The PSR goes into great detail about Mr. McAvenia's background, his upbringing and his (lack of) criminal history. However, of particular interest to the instant sentencing matters before this Court, Mr. McAvenia seeks to highlight facts that we believe frame his conduct through the proper lens.

Mr. McAvenia is 35 years old, and at the time of these offenses, he was between 33 and 34 years of age. He is a high school graduate, with some college credits, who had excelled in his career as a contractor with the federal government despite not having a degree. By way of background, Mr. McAvenia began his professional career as an Emergency Medical Technician on ambulances in New Jersey. For several years, he worked alongside his partner Rebecca going from crisis to crisis.

Through the course of the several years of their partnership, they grew very close and became like brother and sister, though she was a few years older. They both eventually left the New Jersey EMT field because the horrors associated with the day-to-day trauma became too much. Mr. McAvenia lucked out and received a position in Egypt as a contractor instructing federal agents and military on managing emergency crises. He was a contractor with the Department of Defense, where he taught military personnel how to fight fires on ships. Rebecca,

however, went to New Mexico, and began to work as an emergency EMT aboard helicopters, rescuing those in dire emergencies.

Over the course of time, Mr. McAvenia and Rebecca remained in close contact. His time in Egypt came to an end, and he returned to the States where he took a position (one of twelve people in the country) to teach EMS workers and hospital staff how to deal with chemical and biological weapons. During this time, he visited Rebecca. Unfortunately, this would be the last time he saw his friend. Rebecca would perish in a helicopter crash, while attempting a rescue. Mr. McAvenia was devastated and entered a deep depression.

This was not Mr. McAvenia's first bout with depression. He has suffered from depression and anxiety issues since he was in 3rd grade. His parents were never together, and his Father was out of the picture before Mr. McAvenia was born. Both of his parents suffer from mental health disorders, including depression and were both diagnosed as bi-polar. Both parents also have abused drugs as well. Mr. McAvenia's father took his own life in 2014. Yet, the loss of his friend Rebecca eclipsed all of these by far. His depression and hopelessness culminated one night with Mr. McAvenia placing his gun to his head with the safety off, planning to end his life.

Mr. McAvenia desperately wanted to get treatment and to seek the aid of a psychiatrist or therapist. However, Mr. McAvenia had a top-secret security clearance, and he would have to report these issues during his renewal interview. The risk of losing his clearance / employment for Mr. McAvenia was compounded by the fact that he had achieved all that he had with simply a high school diploma. For the past 10 years, or thereabouts, his jobs required college degrees, and sometimes higher, and due to his aptitude in the field, his employers waived the degree requirement to hire him. Accordingly, if his therapy would lead to the loss of his clearance / unemployment,

Mr. McAvenia faced the real risk of homelessness. Thus, he did the best he could to address his mental health and anxiety issues on his own but continued to struggle.

Relief, of sorts occurred when Mr. McAvenia was arrested. He was accused of receiving and being in possession of child pornography ("CP"). At the time of his arrest, Mr. McAvenia willingly waived his right to have counsel present and freely confessed to the crimes he was accused of. He readily admitted which computers the images would be found on, and he discussed his ongoing struggle with untreated mental health issues, which were the impetus behind his desire to seek CP.

Mr. McAvenia, while accused of being in possession of, and receiving CP, is not accused of having any intention to contact underage juveniles. He is neither accused of seeking to act out or produce any CP content or anything that might put him in physical contact or proximity of a minor. The crimes he is accused of, and has plead guilty to, while repugnant, do not betray any sort of escalation from viewing images to more serious misconduct. In fact, there is not one allegation against Mr. McAvenia suggesting that he ever had any intent or interest in acting out this behavior, or to create/produce any content in person.

Mr. McAvenia was originally arrested by the Arlington County Police Department. Once released on bond, he immediately signed up for mental health therapy. In some ways, this arrest presented hope and freedom to Mr. McAvenia, in that he could finally pursue the treatment he so sorely needed. It should be noted that seeking out mental health therapy was not a condition of his bond in the Arlington case, he pursued this on his own, at his own expense.

## Application of the U.S.C. §3553(a) FACTORS

The United States Supreme Court held in *United States v. Booker*, that its Sixth Amendment holdings in *Apprendi v. New Jersey*, 530 U.S. 455 (2000) and *Blakely v. Washington*, 124 S. Ct. 2531 (2005), applied to the Federal Sentencing Guidelines. *United States v. Booker*, 125 S. Ct. 738, 756. There it held that the portions of the Federal Sentencing Reform Act of 1984 which compelled mandatory compliance by the sentencing court, were incompatible with strictures of the Sixth Amendment, and therefore, unconstitutional. Accordingly, the Court's holding effectively left the Federal Sentencing guidelines advisory in nature. *Id* at 757.

Since *Booker*, and subsequent decisions in *Gall v. United States*, and *Kimbrough v. United States*, Sentencing Courts' discretion in sentencing has been "significantly broadened." *United States v. Moon, 513 F.3d 527, 544 (6th Cir. 2008), quoting Gall, 128 S.Ct. at 602*. Courts are now permitted to exercise discretion in sentencing based on the facts before them, rather than mechanically applying the Federal Sentencing Guidelines.

Recognizing that the guidelines are simply the "starting point" in a sentencing analysis, district courts must delve deeper, and make an "individualized assessment based on the facts presented." *Gall*, 128 S.Ct. at 597. In making an individualized assessment, the district court is required to consider all of the factors outlined in 18 U.S.C.A. §3553(a), and is permitted to tailor the sentence in light of other statutory concerns. *Kimbrough*, 128 S.Ct. at 570. A district court may reasonably determine that a within guidelines sentence does not serve the objectives of sentencing, even if that determination ultimately rests on a disagreement with the guidelines. *Kimbrough*, 128 S.Ct. at 564. *See United States v. Pugh*, 515 F.3d 1179, 1190-91 (11th Cir. 2008).

In the final analysis, the goal of performing an individualized sentencing assessment is to arrive at a just sentence, one "sufficient, but not greater than necessary," 18 U.S.C.A. §3553(a), to

serve the purposes of sentencing set forth in §3553(a)(2). *United States v. McBride*, 511 F.3d 1293, 1297 (11th Cir. 2007). The sentencing court is "free to conclude that the applicable guideline range gives too much or too little weight to one or more factors, either as applied in a particular case or as a matter of policy." *United States v. Campos-Maldanado*, 531 F.3d. 337 (5th Cir. 2008).

A district court must give respectful consideration of the guidelines in determining a sufficient sentence, *Gall*, 128 S.Ct. at 594, but it may not presume that the guideline sentence is the correct one. *Rita v. United States*, 127 U.S. 2456, 2465 (2007). The court is free to consider whether the guideline sentence itself "fails to properly reflect §3553(a) considerations" in the case at hand, *Rita*, 127 S.Ct. at 2465, and/or whether the guidelines at issue exemplifies the Sentencing Commission's "exercise of its characteristic institutional role." *Kimbrough*, 128 S.Ct. at 575.

In *Kimbrough v. United States*, 128 S. Ct. 558 (2007), the Supreme Court held that the Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory factors detailed in 18 U.S.C. §3553(a). Courts must consider the recommended guideline range as one of seven co-equal statutory sentencing factors referenced in 18 U.S.C. §3553(a). *United States v. Booker*, 543 U.S. 220, 259-60 (2005). The factors to be considered are: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a). After considering these factors, the Court has discretion to differ with the U.S.S.G.'s custody range, *See Rita v. United States*, 127 S. Ct. 2456

(2007). Furthermore, the sentencing courts must impose the minimum sentence that is sufficient to accomplish the objectives of §3553(a).

Based on the foregoing, Mr. McAvenia believes that a sentence of no more than the mandatory minimum of 60 months is appropriate following a consideration of the 3553(a) factors.

### The Nature and Circumstance of the Offense

As discussed above, Mr. McAvenia's offenses spanned the course of several years. He was identified and detected when his computer attempted to back-up its contents to the cloud. This ultimately spurred the investigation into his misconduct that presents him before this Court for sentencing. While it is not particularly flattering that Mr. McAvenia freely admitted that his pursuit of these images spanned several years. His transparency demonstrates a level of candor that should not be dismissed. Further, the fact that the investigation into Mr. McAvenia took nearly a year before his arrest, and there was no evidence of any intent that his interest in those images evolved into a desire to interact and engage with minors in person, should be noted. His engagement in these crimes never extended past the viewing of images, and he never engaged in any conversation or chats with underage juveniles.

### The History and Characteristics of the Defendant

The history and characteristics of Mr. McAvenia support a variant sentence of sixty (60) months. Mr. McAvenia not only has no criminal record, but this is also the first time that he has ever been arrested. The greatest predictor of Mr. McAvenia's chances at rehabilitation are before this Court to review. Once he was confronted by the authorities, he made no attempt to flee or run. He waived his right to counsel and freely admitted to committing the crimes he was accused of, and he assisted law enforcement with identifying which machines they would find the suspected CP on. Most importantly, knowing that he was going to lose his clearance regardless, he

immediately sought out treatment for his depression and anxiety. It should be noted that the treatment was not prescribed as a condition of his then-bond with the Arlington County General District Court. He sought that out on his own because he had been privately suffering from depression and anxiety for years.

While not minimizing the indescribable harm to the victims in this case that has occurred, it is equally important to note that there is no evidence or suggestion that Mr. McAvenia's interest in CP ever evolved into something more. There is no indication that he has ever engaged in chat room conversations with minors or attempted to meet minors in person. There is also no suggestion that he had any interest in producing or creating content.

### The Need for the Sentence to Reflect the Basic Aims of Sentencing: "Just Punishment," Deterrence, and Rehabilitation

Mr. McAvenia has never been in trouble in his life. At 35 years of age, the mandatory minimum sentence of sixty (60) months contemplates a significant deterrence for Mr. McAvenia. He will no longer be able to work in the field he has spent his entire life engaged in since high school. He will forever be marred with the scarlet letter of not only a felony, but one with an incredible stigma. He will have to pick up the pieces of his life and start from scratch once he is released. The recommended Sentencing Guidelines produce a draconian result that fails to take into account the significant mitigating factors of Mr. McAvenia's mental health struggles, immediate pursuit of treatment, and his unblemished career of service both to his community and to the Country.

### Conclusion

Mr. McAvenia has suffered from mental health and anxiety issues since his childhood. He has a history of bi-polar and other mental health and substance abuse issues in his family. In

addition, the loss of his closest friend intensified his then-existing depression to catastrophic levels ultimately culminating in him attempting suicide. He desperately wanted to seek treatment, but given his limited education, the risk of losing his employment weighed heavily in his decision making. Rightly or wrongly, he chose to privately endure the pain rather than risking losing his job and the very real threat of homelessness for he and his wife.

  He has never run afoul of the law before, and but for this conviction, has never been arrested. He has voluntarily engaged in therapy that he initially sought out and was then court ordered once the federal case convened. His offenses are deplorable; however, he is a non-violent, first-time offender, who has cooperated with law enforcement at all points along the way. He freely, and immediately, confessed to his crimes and has always planned to plead guilty to the offenses he was accused of.

  For the reasons stated above, Mr. McAvenia requests that this court sentence him to a period of in-home incarceration of no more than sixty (60) months. It is Mr. McAvenia's position that this sentence is sufficient to accomplish the objectives of sentencing as detailed in 18 U.S.C. §3553(a).

                        **KEVIN MCAVENIA,**
                        By Counsel
                        Respectfully submitted,

/s/_____
G. "Rex" Flynn, Jr. (VSB #78489)
*Counsel for Defendant*
**The Flynn Law Firm, PLLC**
2111 Wilson Boulevard
Suite 700-F
Arlington, Virginia 22201
703-310-7624 Phone
703-310-7625 Facsimile
Rex.Flynn@FlynnPLLC.com

## **CERTIFICATE**

I hereby certify that on **November 7, 2022**, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to the following:

Rachel L. Rothberg
Special Assistant United States Attorney (LT) United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3980
Email: Rachel.Rothberg2@usdoj.gov


/s/_____
G. "Rex" Flynn, Jr. (VSB #78489)
*Counsel for Defendant*
**The Flynn Law Firm, PLLC**
2111 Wilson Boulevard
Suite 700-F
Arlington, Virginia 22201
703-310-7624 Phone
703-310-7625 Facsimile
Rex.Flynn@FlynnPLLC.com